Lynn LEWIS, Jr., Appellant,

v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Appellee.

No. 89–878.

Supreme Court of Iowa.

March 21, 1990.

R. Ronald Pogge of Hopkins & Huebner,
P.C., Des Moines, for appellant.

David L. Leitner of Davis, Grace, Horvath, Gonnerman & Rouwenhorst, P.C.,
Des Moines, for appellee.

Considered by McGIVERIN, C.J., and
HARRIS, LARSON, CARTER and
NEUMAN, JJ.

CARTER, Justice.

Plaintiff, Lynn Lewis, sustained a work-related injury in 1974. His employer, Wilson Foods Corporation, paid weekly workers' compensation benefits and medical benefits. The final weekly benefit was paid on April 29, 1977. On October 3, 1977, plaintiff filed a petition for review-reopening pursuant to Iowa Code section 86.34 (1975). He was represented by attorneys Gerald Crawford and Greg Seyfer.

On November 24, 1981, plaintiff's review-reopening proceeding was dismissed by the industrial commissioner when neither he nor his attorneys responded to a request for an analysis-of-status form and later failed to respond to an order to show cause why the proceeding should not be dismissed. Plaintiff contends that neither Crawford nor Seyfer advised him of these events and that he first learned his review-reopening petition had been dismissed from other sources some time in 1983.

On August 1, 1983, plaintiff obtained new counsel who filed a request to reinstate his review-reopening petition before the industrial commissioner. The motion to reinstate was filed on August 5, 1983. On August 19, 1983, plaintiff's new counsel wrote to Crawford and Seyfer advising them that their law firm had been retained by plaintiff, that firm had filed an application to reinstate his review-reopening claim, and further stating as follows:

This letter is to advise you that Mr. Lewis intends to present a claim against each of you should his attempts to reinstate the previous proceeding fail. I would ask that each of you notify the appropri-

ate insurance carrier of this claim and ask that they contact us so that we can determine that they have received an appropriate notification. I would also ask for some written confirmation that we have obtained all information concerning Mr. Lewis' workers' compensation claim from your files.

This letter also advised plaintiff's former attorneys that his present counsel were possessed of expert medical testimony sufficient to sustain a substantial permanent disability claim with respect to plaintiff's work-related injuries at Wilson Foods.

On September 15, 1983, a deputy industrial commissioner reinstated plaintiff's review-reopening proceeding. Nearly two years later, however, another deputy industrial commissioner determined that the agency had lacked subject matter jurisdiction to reinstate the plaintiff's claim on September 15, 1983, and overturned the prior ruling of the other deputy. On January 2, 1986, plaintiff's new counsel wrote both Crawford and Seyfer advising them of the developments in plaintiff's workers' compensation claim.

The January 2 letter indicated that they had appealed the second deputy's decision to the industrial commissioner and were awaiting a ruling. It further stated:

> However, if the Commissioner upholds the deputy, it would appear that Mr. Lewis' claim against both of you would be renewed. I am enclosing for your information a copy of [our] earlier letter to you as well as a copy of the August 27, 1985 review-reopening decision. If either of you desire additional information, please don't hesitate to contact me.

On July 1, 1986, the industrial commissioner affirmed the second deputy's ruling that the agency was without subject matter jurisdiction to reinstate plaintiff's review-reopening proceeding.

On July 25, 1986, the law firm of Neiman, Neiman, Stone & Spellman, P.C., of Des Moines, with which Crawford had become associated subsequent to his representation of plaintiff, obtained a new "claims made" policy of legal malpractice insurance from the defendant, St. Paul Fire and Marine Insurance Company. On July 29, 1986, plaintiff's counsel again wrote Crawford and Seyfer advising them of the decision of the industrial commissioner affirming the second deputy's order. This letter tendered to Crawford and Seyfer the handling of all further proceedings in an action for judicial review of the industrial commissioner's July 1, 1986, decision. The letter advised them that unless they accepted responsibility for pursuing the judicial review proceeding within thirty days that matter would be abandoned and a malpractice action would be commenced against attorneys Crawford and Seyfer.

The record does not reflect the ultimate disposition of the judicial review proceeding, but on March 16, 1987, plaintiff filed an action against Crawford for legal malpractice in connection with the dismissal of his workers' compensation claim. Plaintiff ultimately obtained a default judgment in that action and was awarded damages of $106,063.12 on June 1, 1988.

The present action was commenced by plaintiff on July 18, 1988, against defendant, St. Paul Fire and Marine Insurance Company, after an execution on his judgment against Crawford had been returned unsatisfied. The defendant insurance company answered and later moved for summary judgment. After a hearing on the motion for summary judgment, the district court sustained the motion on the basis that defendant's "claims made" policy excluded claims which had been made against its insureds prior to the effective date of the policy. The district court concluded that the correspondence from plaintiff's counsel to Crawford on August 19, 1983, and January 2, 1985, constituted malpractice claims made before defendant's policy went into effect.

In appealing the district court's determination that the defendant insurance company did not provide coverage for his claim against Crawford, plaintiff centers his arguments on whether his malpractice claim was made during the coverage period of defendant's policy. Plaintiff's first argument looks at the definition of "claim"; the

second looks at the definition of the policy term "wrongful act."

The parties agree that the policy in question is a "claims made" policy as opposed to an "occurrence" policy. This court distinguished between these two bases of coverage in *First Newton National Bank v. General Casualty Co.*, 426 N.W.2d 618, 623 (Iowa 1988), stating:

> Liability policies generally fall into two classifications: an "occurrence" policy and a "claims made" policy. The occurrence policy provides coverage if the event insured against (the "occurrence") takes place within the policy period, regardless of when a claim is made. In contrast, a claims made policy provides coverage only if a claim of the insured's liability arising from a covered hazard is presented during the policy period.

*See also Zuckerman v. National Union Fire Ins. Co.*, 100 N.J. 304, 495 A.2d 395, 398 (1985) (peril being insured against is making of claim, regardless of when occurrence took place); *see generally* 37 A.L. R.4th 382, 390 (1985).

The St. Paul malpractice insurance policy involved in this case did not define the word "claim." Both the plaintiff and the defendant point to *City of Marion v. National Casualty Co.*, 431 N.W.2d 370 (Iowa 1988), for a definition. The plaintiff quotes the following passage:

> In its ordinary sense, the term imports the assertion, demand or challenge of something as a right; the assertion of a liability to the party making it to do some service or pay a sum of money.... *A claim connotes an assertion of a legal right, as distinguished from a recognition of that right.*

*Id.* at 373 (emphasis added) (quoting with approval from *Williamson & Vollmer Eng'g, Inc. v. Sequoia Ins. Co.*, 64 Cal. App.3d 261, 269, 134 Cal.Rptr. 427, 431 (1976)); *see also City of Marion*, 431 N.W.2d at 374 (court also approved of Webster's definition of claim as "an authoritative or challenging request, a demand of a right or supposed right, or a calling on another for something due or supposed to be due"). Based on this definition, the

plaintiff argues that a claim was not asserted until the third letter. The first two letters merely notified Crawford of a *recognition* of a right.

■ As our decision in the *City of Marion* case indicates, the determinative policy coverage issue in cases of this type is not whether a particular claim is asserted against the insured during the policy period but rather whether that claim has previously been asserted against the insured prior to the effective date of the coverage at issue. We suggested that, under a claims-made policy, coverage is effective if an assertion of potential liability for the negligent or omitted act is first communicated to the insured during the policy term. *City of Marion*, 431 N.W.2d at 373.

■ The defendant insurer in the present case has sought to delineate its coverage for acts antedating the policy not by defining "claim" or "claim first made," but rather by language describing the circumstances under which actions of the insured antedating the policy will be covered. That language reads as follows:

> Prior acts. We'll cover claims based on a wrongful act that occurred before the effective date of this agreement, but only if all of the following conditions are met:
>
> The protected person involved had no knowledge of the prior wrongful act on the effective date of this agreement nor any reasonable way to foresee that a claim might be brought.
>
> The claim is reported to us while this agreement is in effect, and
>
> Any other insurance covering the claim has been used up.

Plaintiff is seeking to make Crawford the "protected person" within defendant's policy. Given the record of correspondence to Crawford concerning this claim, the conclusion is inescapable that beginning with the August 19, 1983, letter Crawford should reasonably have foreseen that plaintiff would seek recourse against him based on the circumstances under which plaintiff's workers' compensation claim had been dismissed. The district court was correct in concluding that, under the circumstances

of this case, the defendant's policy does not cover the act on which plaintiff's liability claim against Crawford was predicated.

■ As a second argument, plaintiff contends that the loss resulting from Crawford's actions in allowing the workers' compensation case to be dismissed did not arise until the decision of the industrial commissioner finally determined that the claim could not be reinstated. Until there is a loss, he argues no "wrongful act," as defined in the policy, has occurred. Based on this premise, plaintiff urges that the notification of loss given to Crawford on July 29, 1986, was the first notice of the claim after it matured. Although this is an ingenious argument, we do not believe it should prevail in the present case. If plaintiff's review-reopening petition filed on October 3, 1977, was meritorious, it should have been pursued to a successful conclusion long before July 1, 1986, the date on which the industrial commissioner finally determined that the claim could not be reinstated. Thus, it is apparent that plaintiff suffered some injury prior to that time. Moreover, because the industrial commissioner ultimately concluded that jurisdiction to reinstate the claim ended on February 24, 1982 (three months after its dismissal), plaintiff's claim matured by all accounts no later than that date.

We have considered all arguments presented and conclude that the district court's decision denying coverage under defendant's policy was correct. The judgment of the district court is affirmed.

AFFIRMED.